NORRIS McLAUGHLIN, P.A.
Margaret Raymond-Flood, Esq.
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
Direct: 908-252-4228
Email: mrflood@norris-law.com
Attorneys for Defendant, University Correctional Health
Care, a constituent unit of Rutgers, The State University
of New Jersey

|  |  |  |
|---|---|---|
| BRANDON JONES, | : | UNITED STATES DISTRICT COURT |
|  | : | FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | : |  |
|  | : | CIVIL ACTION NO.: |
| vs. | : |  |
|  | : | ELECTRONICALLY FILED |
| NAKIA BOWMAN, CONSOLATA | : |  |
| MULLI, IMANI PERRY, CFG HEALTH | : |  |
| SYSTEMS, LLC, DR. FNU UNIGBE, | : | NOTICE OF REMOVAL |
| DR. FNU FAN, UNIVERSITY | : |  |
| CORRECTIONAL HEALTH CARE, DR. | : |  |
| FNU KELITTA, DR. FNU HAGGAG, | : |  |
| BRUCE DAVIS, STATE OF NEW | : |  |
| JERSEY DEPARTMENT OF | : |  |
| CORRECTIONS and JOHN/JANE DOES | : |  |
| 1-50, | : |  |
|  | : |  |
| Defendants. | : |  |

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant, University Correctional Health Care, a constituent unit of Rutgers, The State University of New Jersey (improperly pled as University Correctional Healthcare) ("UCHC" or the "Removing Defendant"), hereby removes this action, with full reservation of all defenses, including but not limited to the defense that UCHC was not properly served with process, which had been pending in the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1714-20 (the "Subject Action"), to the United States District Court for the District of New Jersey, and states as follows:

1.     <u>Complaint</u>.  On or about September 9, 2020, Brandon Jones ("Plaintiff") filed his initial complaint.  On March 16, 2021, plaintiff filed an Amended Complaint (the "Amended Complaint") against the Removing Defendant, Nakia Bowman, Consolata Mulli, Imani Perry, CFG Health Systems, LLC, Dr. fnu Unigbe, Dr. fnu Fan, Dr. fnu Kelitta, Dr. fnu Haggag, Bruce Davis, State of New Jersey Department of Corrections and fictitious John and Jane Does 1-50, asserting claims that include deliberate indifference and violations of the Civil Rights Act as set forth in Counts One through Thirteen.  <u>See</u> Amended Complaint at paragraphs 8, 91 and 296. The docket number on the Amended Complaint is BUR-L-1714-20.  Plaintiff sets forth claims against the Removing Defendant in Counts Seven and Nine "in accordance with *Monell* under the Civil Rights Act…."  <u>See</u> Amended Complaint at paragraphs 144 and 251. Plaintiff also sets forth claims against other defendants "in accordance with *Monell* under the Civil Rights Act." <u>See</u> Amended Complaint at paragraph 93.  A <u>Monell</u> claim under the Civil Rights Act, as set forth against UCHC in Plaintiff's Amended Complaint, is derived from the Supreme Court of the United States' holding in <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978).  In <u>Monell</u>, the Supreme Court's decision was based on an analysis of 42 U.S.C. §1983 and the related legislative history. That decision was not based on a state civil rights statute. Accordingly, the <u>Monell</u> claims asserted against UCHC in Plaintiff's Amended Complaint are based in federal law and raise a federal question.  A copy of all pleadings and orders obtained by the Removing Defendant from Plaintiff in this action are attached as **Exhibit A**.

2.     <u>Basis for Jurisdiction in this Court</u>.  This Court has federal question jurisdiction over this matter under 28 <u>U.S.C.</u> § 1331 which provides that "[t]he district courts shall have

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3.      <u>Consent</u>.    UCHC is the Removing Defendant and consents to removal. Defendants Nakia Bowman, Consolata Mulli, Imani Perry, and CFG Health Systems, LLC, filed answers and consent, through their counsel, to this removal.   According to the State Court Docket, no proofs of service were filed for any other named defendants, so consent of defendants who have not been properly served is not required for removal.   The remaining Doe Defendants are identified as fictitious parties and have not, to the knowledge of the Removing Defendant, been identified or served.   The consent of unserved, fictitious defendants is not required for removal.

4.      <u>Notice Given</u>.   The Removing Defendant will file a true and correct copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Burlington County, and serve same as set forth in the Declaration of Service submitted herewith. <u>See</u> 28 <u>U.S.C.</u> §1446(d).

5.      <u>Removal is Timely</u>.   This Notice of Removal is signed pursuant to <u>Fed. R. Civ. P.</u> 11 and is timely filed within 30 days after July 23, 2021, the date the Removing Defendant received a copy of Plaintiff's Amended Complaint and Summons.   <u>See</u> 28 <u>U.S.C.</u> §1446(b).

6.      <u>Pleadings and Process</u>.   As required by 28 <u>U.S.C.</u> §1446(a), the Removing Defendant has attached as **Exhibit A** to this Notice of Removal "a copy of all process, pleadings, and orders served upon" it in this action.

7.      <u>Prerequisites</u>.   The prerequisites for removal under 28 <u>U.S.C.</u> § 1441 have been met.

8.      <u>Venue</u>.  Removal to the United States District Court for the District of New Jersey is appropriate because this action is being removed from the Superior Court of New Jersey, Burlington County, which is located within the District of New Jersey.

9.      <u>Defenses</u>. By removing this action to this Court, the Removing Defendant does not waive any defenses available to it.

10.     If any question arises as to the propriety of the removal of this action, the Removing Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE the Removing Defendant respectfully requests that this Notice of Removal be filed; that the Subject Action in the Superior Court of New Jersey, Burlington County, be removed to this District Court; and that no further proceedings be had in the Superior Court of New Jersey, Burlington County.

NORRIS McLAUGHLIN, PA
Attorneys for Defendant, University Correctional Health Care, a constituent unit of Rutgers, The State University of New Jersey

By: _____
        Margaret Raymond-Flood

Dated:  August 20, 2021

## **LOCAL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that, at the time of filing the within papers, the undersigned is not aware that the matter in controversy is the subject of actions pending in any other court, or of any pending arbitration or administrative proceeding.

Dated:  August 20, 2021

_____
Margaret Raymond-Flood

## SUMMONS

Attorney(s) Peter Kober, Esq.

Office Address 1864 Route 70 East

Town, State, Zip Code Cherry Hill, NJ 08003

Telephone Number (856) 761-5090

Attorney(s) for Plaintiff Brandon Jones

BRANDON JONES

Plaintiff(s)

vs.

UNIVERSITY CORRECTIONAL

HEALTH CARE, et al.

Defendant(s)

### Superior Court of New Jersey

Burlington County

Law Division

Docket No: BUR-L-001714-20

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

Michelle M. Smith

Clerk of the Superior Court

DATED: 07/22/2021

Name of Defendant to Be Served: University Correctional Health Care

Address of Defendant to Be Served: c/o Office of the Secretary, 7 College Ave, Rm 112, New Brunswick, NJ 08901

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

Peter Kober, Esq.
006481979
Kober Law Firm, LLC
1864 Route 70 East
Cherry Hill, NJ 08003
(856) 761-5090
Attorney for Plaintiff, Brandon Jones

---

BRANDON JONES,

|                                                    | Superior Court of New Jersey
|                                                    | Law Division: Burlington County
|            Plaintiff                               |
|                                                    | Docket No. BUR-L-001714-20
|            vs.                                     |
|                                                    | **Civil Action**
|                                                    |
|                                                    | **AMENDED COMPLAINT**
|                                                    | **AND JURY DEMAND**
| NAKIA BOWMAN, CONSOLATA MULLI, IMANI PERRY,        |
| CFG HEALTH SYSTEMS, LLC, DR. FNU UNIGBE, DR. FNU   |
| FAN, UNIVERSITY CORRECTIONAL HEALTH CARE,          |
| DR. FNU KELITTA, DR. FNU HAGGAG, BRUCE DAVIS,      |
| STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS,     |
| and JOHN/JANE DOES 1-50,                           |
|                                                    |
|            Defendants                              |

---

BRANDON JONES, residing at New Jersey State Prison, 600 Cass Street, in the City of

Trenton, County of Mercer, and State of New Jersey, by way of amended complaint against

the above-named defendants, alleges as follows:

## COUNT I

1. Plaintiff, BRANDON JONES, is an adult individual, who is a an inmate serving a term of

   imprisonment in state prison, currently at New Jersey State Prison, 600 Cass Street,

   in the City of Trenton, County of Mercer, and State of New Jersey 08608.

2. Defendant, CFG HEALTH SYSTEMS, LLC, is a corporate entity, which operates the medical department of the Burlington County Jail, under a contract with the County of Burlington, with a principal office at 765 East Route 70, in the Township of Evesham, County of Burlington, and State of New Jersey 08053.

3. Defendant, NAKIA BOWMAN, sued in her individual capacity, is a nurse employed inside the Burlington County Jail by Defendant, CFG HEALTH SYSTEMS, LLC, with a principal office at 765 East Route 70, in the Township of Evesham, County of Burlington, and State of New Jersey 08053.

4. On January 31, 2019 to August 26, 2019, Defendant, CFG HEALTH SYSTEMS, LLC, was responsible for the health care of Plaintiff, BRANDON JONES.

5. Defendant, CFG HEALTH SYSTEMS, LLC, operated under color of state law.

6. On January 31, 2019, Defendant, NAKIA BOWMAN, participated in the health care of Plaintiff, BRANDON JONES.

7. Defendant, NAKIA BOWMAN, acted under color of state law.

8. Plaintiff sues under the Civil Rights Act.

9. On January 31, 2019 until his sentencing in June 2019, Plaintiff, BRANDON JONES, was a pretrial detainee at the Burlington County Jail, located at 54 Grant Street, in the Township of Mount Holly, County of Burlington and State of New Jersey 08060.

10. On January 31, 2019 at approximately 10 P.M., Plaintiff, BRANDON JONES, had an initial screening with a medical professional, who was Defendant, NAKIA BOWMAN, at the Burlington County Jail.

2

11. During the course of his January 31, 2019 initial medical screening, Plaintiff, BRANDON JONES, told Defendant, NAKIA BOWMAN, that he needed medical attention for a wound with an infection on his foot.

12. Defendant, NAKIA BOWMAN, asked Plaintiff on 1/31/19 to show her his foot.

13. Plaintiff did show Defendant, NAKIA BOWMAN, his foot on January 31, 2019.

14. At the time when Plaintiff showed Defendant, NAKIA BOWMAN, his foot on 1/31/19, Plaintiff had an easily visible, obvious wound with an infection on his foot.

15. Defendant, NAKIA BOWMAN, looked at Plaintiff's foot on January 31, 2019.

16. Following her 1/31/19 visual observation of Plaintiff, BRANDON JONES' foot, Defendant, NAKIA BOWMAN, was knowledgeable that Plaintiff, BRANDON JONES, had a wound with an infection on his foot.

17. Following her 1/31/19 visual observation of Plaintiff, BRANDON JONES' foot, Defendant, NAKIA BOWMAN, said to Plaintiff why didn't you take care of your foot while you were on the street.

18. Following her 1/31/19 visual observation of Plaintiff, BRANDON JONES' foot, Defendant, NAKIA BOWMAN, did, moreover, complain to Plaintiff that detainees such as himself wait until they come to jail to get medical care in an effort to fix everything that is wrong with them.

19. Following her 1/31/19 visual observation of Plaintiff's foot, Defendant, NAKIA BOWMAN, said to Plaintiff that the wound with the infection on his foot would be okay.

3

20. Defendant, NAKIA BOWMAN, told Plaintiff on 1/31/19 to put his shoe back on.

21. After being told on 1/31/19 to put his shoe back on, Plaintiff asked Defendant, NAKIA
    BOWMAN, if she was going to treat the wound with the infection on his foot.

22. Defendant, NAKIA BOWMAN, heard Plaintiff's question, are you going to treat the
    wound with the infection on my foot.

23. Defendant, NAKIA BOWMAN, in response to Plaintiff's 1/31/19 question, answered no.

24. Defendant, NAKIA BOWMAN, omitted, on 1/31/19, to put a notation on Plaintiff's chart
    to alert the nurse practitioner that Plaintiff had a wound with an infection on his foot.

25. The law recognizes that delay/denial of medical care for a serious medical need is a type
    of deliberate indifference to a serious medical need.

26. The law further recognizes that deliberate indifference to a serious medical need of a
    pretrial detainee by members of a prison medical staff will trigger a right involving
    principles decided under N.J. Const. Article I Paragraph 12 which shall not be violated or
    interfered with by state actors.

27. The conduct of Defendant, NAKIA BOWMAN, as aforesaid, violated Plaintiff's right under
    N.J. Const. Art. I Par. I under principles decided under N.J. Const. Art. I Paragraph 12.

28. As a direct and proximate result of the conduct of Defendant, NAKIA BOWMAN, acting
    in her individual capacity, as aforesaid, Plaintiff's foot infection progressed to a greater
    severity by the time of Plaintiff's transfer to state prison on 8/26/19 than would have
    been the case if Plaintiff's foot had been treated or made a matter of record by
    Defendant, NAKIA BOWMAN, in the Burlington County Jail.

4

29. As a further direct and proximate result of the conduct of Defendant, NAKIA BOWMAN, acting in her individual capacity, as aforesaid, Plaintiff's foot infection progressed to a greater severity by the time of the assumption of Plaintiff's healthcare by University Correctional Healthcare, the healthcare provider for the state prison system, on 8/26/19 than would have been the case if Plaintiff's foot had been treated or made a matter of record by Defendant, NAKIA BOWMAN, in the Burlington County Jail.

30. As a further direct and proximate result of the conduct of Defendant, NAKIA BOWMAN, as aforesaid, Plaintiff's foot infection progressed to osteomyelitis during his time under the medical care of University Correctional Healthcare, which required and continues to require painful treatment in order to attempt to effectuate a cure, which would not have been the case if Plaintiff's foot had been treated or made a matter of record by Defendant, NAKIA BOWMAN, in the Burlington County Jail.

31. As a further direct and proximate result of the conduct of Defendant, NAKIA BOWMAN, as aforesaid, Plaintiff suffered trips to Trenton for treatment, more treatment, more physical pain, prospective amputation, more emotional distress and more mental anguish than would have been the case if Plaintiff's foot had been treated or made a matter of record by Defendant, NAKIA BOWMAN, in the Burlington County Jail.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendant, NAKIA BOWMAN, acting in her individual capacity, for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs of suit.

5

## COUNT II

32. Plaintiff, BRANDON JONES, repeats the allegations of the First Count, and incorporates the same by reference as if fully set forth at length herein.

33. Defendant, IMANI PERRY, sued in her individual capacity, is a nurse employed inside the Burlington County Jail by Defendant, CFG HEALTH SYSTEMS, LLC, with a principal office at 765 E. Route 70, in the Twp. of Evesham, Cty. of Burlington and State of New Jersey.

34. On or shortly after February 1, 2019, Plaintiff did, at the suggestion of Defendant, CONSOLATA MULLI, put in a medical slip to request treatment for his foot.

35. On 2/4/19, Defendant, IMANI PERRY, participated in the health care of Plaintiff.

36. Defendant, IMANI PERRY, acted under color of state law.

37. On February 4, 2019, at approximately 1:35 P.M., Plaintiff, BRANDON JONES, was called to the medical department of the Burlington County Jail to provide some additional general information.

38. When called to the medical department on 2/4/19, Plaintiff responded.

39. Upon his arrival at the medical department on 2/4/19 in response to the call, Plaintiff was seen in medical consultation by Defendant, IMANI PERRY.

40. During the course of his medical consultation on 2/4/19, Plaintiff asked Defendant, IMANI PERRY, what about providing some medical attention for my foot.

41. Defendant, IMANI PERRY, heard Plaintiff's question.

42. Defendant, IMANI PERRY, responded to Plaintiff's 2/4/19 question by asking what's wrong with your foot.

6

43. Plaintiff, BRANDON JONES, responded to Defendant, IMANI PERRY's 2/4/19 question by explaining he had a wound with an infection on his foot, that his foot was bleeding, that there was pus seeping from the toe, and that a stinky smell was coming from the area of the infection on his foot.

44. Plaintiff, BRANDON JONES, further responded to Defendant, IMANI PERRY's 2/4/19 question by explaining that by this time he was wrapping his foot with toilet paper in an attempt to slow down the seeping pus and cover up the stinky smell.

45. Plaintiff suggested on 2/4/19 that Defendant, IMANI PERRY, look at his foot.

46. Defendant, IMANI PERRY, heard Plaintiff's suggestion.

47. Defendant, IMANI PERRY, agreed on 2/4/19 to look at Plaintiff's foot.

48. Defendant, IMANI PERRY, did look at Plaintiff's foot on 2/4/19.

49. In order for Defendant, IMANI PERRY, to look at his foot on 2/4/19, Plaintiff, BRANDON JONES, unwrapped the toilet paper from his foot.

50. Defendant, IMANI PERRY, viewed Plaintiff's foot on 2/4/19 with the shoe, sock and toilet paper off leaving the foot fully exposed.

51. At the time Defendant, IMANI PERRY, looked at Plaintiff's fully exposed foot on 2/4/19, Plaintiff had an easily visible, obvious wound with an infection on his foot, with bleeding, pus seeping from the toe and a stinky smell coming from the area of infection.

52. Following her 2/4/19 visual observation of Plaintiff's foot, Defendant, IMANI PERRY, was knowledgeable that Plaintiff had a wound with an infection on his foot, with bleeding, pus seeping from the toe and a stinky smell coming from the area of the infection.

53. Following Defendant, IMANI PERRY's 2/4/19 visual observation of Plaintiff's foot,

Defendant, IMANI PERRY, told Plaintiff we can't help you with that.

54. Defendant, IMANI PERRY, did not, on 2/4/19, offer any treatment for Plaintiff's foot.

55. Defendant, IMANI PERRY, omitted, on 2/4/19, to put a notation on Plaintiff's chart to

alert the nurse practitioner that Plaintiff had a wound with an infection on his foot.

56. The conduct of Defendant, IMANI PERRY, as aforesaid, violated Plaintiff's right under

N.J. Const. Art. I Par. I under principles decided under N.J. Const. Art. I Par. 12.

57. As a direct and proximate result of the conduct of the Defendant, IMANI PERRY, acting

in her individual capacity, as aforesaid, Plaintiff's foot infection progressed to a greater

severity by the time of Plaintiff's transfer to state prison on 8/26/19 than would have

been the case if Plaintiff's foot had been treated or made a matter of record by

Defendant, IMANI PERRY, in the Burlington County Jail.

58. As a further direct and proximate result of the conduct of the Defendant, IMANI PERRY,

as aforesaid, Plaintiff's foot infection progressed to a greater severity by the time of the

assumption of Plaintiff's healthcare by University Correctional Healthcare on 8/26/19

than would have been the case if Plaintiff's foot had been treated or made a matter of

record by Defendant, IMANI PERRY, in the Burlington County Jail.

59. As a further direct and proximate result of the conduct of the Defendant, IMANI PERRY,

as aforesaid, Plaintiff's foot infection progressed to osteomyelitis during his time under

the medical care of University Correctional Healthcare, which required and continues

to

8

require painful treatment in order to attempt to effectuate a cure, which would not

have been the case if Plaintiff's foot had been treated or made a matter of record by

Defendant, IMANI PERRY, in the Burlington County Jail.

60. As a further direct and proximate result of the conduct of the Defendant, IMANI PERRY,

as aforesaid, Plaintiff suffered trips to Trenton for treatment, more treatment, more

physical pain, prospective amputation, more emotional distress and more mental

anguish than would have been the case if Plaintiff's foot had been treated or made a

matter of record by Defendant, IMANI PERRY, in the Burlington County Jail.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendant, IMANI

PERRY, for compensatory damages, punitive damages, reasonable attorney's fees, interest and

costs of suit.

## COUNT III

61. Plaintiff, BRANDON JONES, repeats the allegations of the First-Second Counts, and

incorporates the same by reference as if fully set forth at length herein.

62. Defendant, CONSOLATA MULLI, sued in her individual and official capacities, is a nurse

practitioner employed inside the Burlington County Jail by Defendant, CFG HEALTH

SYSTEMS LLC, with a principal office at 765 East Route 70, in the Township of Evesham,

County of Burlington, and State of New Jersey 08053.

63. On January 31, 2019 to August 26, 2019, Defendant, CONSOLATA MULLI, was

responsible for the health care of Plaintiff, BRANDON JONES.

9

64. Defendant, CONSOLATA MULLI, acted under color of state law.

65. On February 1, 2019 at approximately 9:30 A.M., Plaintiff, BRANDON JONES, had an

   initial medical screening with a nurse practitioner, Defendant, CONSOLATA MULLI, at

   the Burlington County Jail.

66. During the course of his 2/1/19 initial medical screening, Plaintiff, BRANDON JONES, told

   Defendant, CONSOLATA MULLI, that he needed medical attention for a wound with an

   infection on his foot.

67. Plaintiff, BRANDON JONES, told Defendant, CONSOLATA MULLI, on 2/1/19 that his foot

   was bleeding, that there was pus seeping from the toe, and that a stinky smell was

   coming from the area of the infection on his foot.

68. Plaintiff asked Defendant, CONSOLATA MULLI, on 2/1/19 to look at his foot.

69. Defendant, CONSOLATA MULLI, heard Plaintiff's 2/1/19 request to look at his foot.

70. Defendant, CONSOLATA MULLI, agreed on 2/1/19 to look at Plaintiff's foot.

71. Defendant, CONSOLATA MULLI, did look at Plaintiff's foot on 2/1/19.

72. At the time Defendant, CONSOLATA MULLI, looked at Plaintiff's foot on 2/1/19, Plaintiff

   had an easily visible, obvious wound with an infection on his foot, with bleeding, pus

   seeping from the toe, and a stinky smell coming from the area of the infection.

73. Following her 2/1/19 visual observation of Plaintiff's foot, Def., CONSOLATA MULLI, was

   knowledgeable that Plaintiff had a wound with an infection on his foot, with bleeding,

   pus seeping from the toe, and a stinky smell coming from the area of the infection.

10

74. Following Defendant, CONSOLATA MULLI's 2/1/19 visual observation of Plaintiff's foot, Plaintiff asked Defendant, CONSOLATA MULLI, if she was going to treat his foot.

75. Defendant, CONSOLATA MULLI, told Plaintiff on 2/1/19 that his foot looked okay.

76. Defendant, CONSOLATA MULLI, told Plaintiff on 2/1/19 that there was nothing she could do for his foot.

77. Defendant, CONSOLATA MULLI, did not, on 2/1/19, treat Plaintiff's foot.

78. Defendant, CONSOLATA MULLI, did not, on 2/1/19, put a notation on Plaintiff's chart to alert the medical department that Plaintiff had a wound with an infection on his foot.

79. Defendant, CONSOLATA MULLI, told Plaintiff on 2/1/19 to put in a medical slip to request treatment for his foot.

80. On or shortly after 2/1/19, Plf. did put in a medical slip to request treatment for his foot.

81. From his sentencing in June, 2019 until his transfer to state prison on August 26, 2019, Plaintiff, BRANDON JONES, was a prisoner in the Burlington County Jail, 54 Grant Street, in the Township of Mount Holly, County of Burlington, and State of New Jersey 08060.

82. Subsequent to putting in a medical slip to request treatment for his foot, on or shortly after 2/1/19, during the time of his stay in the Burlington County Jail to 8/26/19, Plaintiff got no response from the medical department, related to said medical slip, calling him to come into the medical department to get seen for his complaints regarding his foot.

83. Subsequently, during the time of his stay in the Burlington County Jail to 8/26/19, Plaintiff was not provided with a cleansing of his foot, any clean bandages, any antibiotic, nor any other medical attention to his foot by Defendant, CONSOLATA MULLI.

11

84. The conduct of Defendant, CONSOLATA MULLI, acting in her individual capacity, as aforesaid, violated Plaintiff's right under N.J. Const. Art. I Par. I while he was a pretrial detainee and N.J. Const. Art. I Par. 12 while he was a prisoner under principles decided under N.J. Const. Art. I Par. 12.

85. As a direct and proximate result of the conduct of the Defendant, CONSOLATA MULLI, acting in her individual capacity, as aforesaid, Plaintiff's foot infection progressed to a greater severity by the time of Plaintiff's transfer to state prison on 8/26/19 than would have been the case if Plaintiff's foot had been treated or made a matter of record by Defendant, CONSOLATA MULLI, in the Burlington County Jail.

86. As a further direct and proximate result of the conduct of the Defendant, CONSOLATA MULLI, as aforesaid, Plaintiff's foot infection progressed to a greater severity by the time of the assumption of Plaintiff's healthcare by University Correctional Healthcare on 8/26/19 than would have been the case if Plaintiff's foot had been treated or made a matter of record by Defendant, CONSOLATA MULLI, in the Burlington County Jail.

87. As a further direct and proximate result of the conduct of the Defendant, CONSOLATA MULLI, as aforesaid, Plaintiff's foot infection progressed to osteomyelitis during his time under the medical care of University Correctional Healthcare, which required and continues to require painful treatment in order to attempt to effectuate a cure, which would not have been the case if Plaintiff's foot had been treated or made a matter of record by Defendant, CONSOLATA MULLI, in the Burlington County Jail.

12

88. As a further direct and proximate result of the conduct of the Defendant, CONSOLATA

MULLI, as aforesaid, Plaintiff suffered trips to Trenton for treatment, more treatment,

more physical pain, prospective amputation, more emotional distress and more mental

anguish than would have been the case if Plaintiff's foot had been treated or made a

matter of record by Defendant, CONSOLATA MULLI, in the Burlington Cty. Jail.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendant,

CONSOLATA MULLI, for compensatory damages, punitive damages, reasonable attorney's fees,

interest and costs of suit.

## COUNT IV

89. Plaintiff, BRANDON JONES, repeats the allegations of the First-Third Counts, and

incorporates the same by reference as if fully set forth at length herein.

90. Defendant, CONSOLATA MULLI, was a person with final policy-making authority on

whether Plaintiff would or would not get treatment for the wound and infection on his

foot, so that her decision represented final policy.

91. The law recognizes that a person, acting in her official capacity, may violate the Civil

Rights Act if by her action, although the need to take some other action Is obvious, the

inadequacy of existing practice is so likely to result in the violation of constitutional

rights, that the policymaker can reasonably be said to have been deliberately indifferent

to the Plaintiff's serious medical need.

92. The inaction of Defendant, CONSOLATA MULLI, acting in her official capacity, as

aforesaid, between 2/1/19 and 8/26/19, instead of taking action to see to it that

13

Plaintiff's serious medical needs were met, was such an inadequate practice so as to be deliberate indifference to a serious medical need, and in violation of Plaintiff's right under N.J. Const. Art. I Par. I while he was a pretrial detainee and N.J. Const. Art. I Par. 12 while he was a prisoner under principles decided under N.J. Const. Art. I Par. 12.

93. Defendant, CFG HEALTH SYSTEMS, LLC, may be liable in accordance with *Monell* under the Civil Rights Act for the establishment of a policy by Defendant, CONSOLATA MULLI, of inaction between 2/1/19 and 8/26/19, instead of taking action to see to it that Plaintiff's serious medical needs were met, which, when implemented by Defendant, CFG HEALTH SYSTEMS, LLC's medical staff, caused a deprivation of Plaintiff's right.

94. By being subject to inaction instead of action to meet his serious medical needs, as aforesaid, between 2/1/19 and 8/26/19, by reason of the implementation of a policy established by Defendant, CFG HEALTH SYSTEMS, LLC to deny Plaintiff medical care for the wound and infection on his foot, by employees of Defendant, CFG HEALTH SYSTEMS, LLC, in accordance with *Monell*, Plaintiff was deprived of a right under N.J. Const. Art. I Par. I while he was a pretrial detainee and N.J. Const. Art. I Par. 12 while he was a prisoner under principles decided under N.J. Const. Art. 1 Par. 12.

95. As a direct and proximate result of the conduct of the Defs., CONSOLATA MULLI, acting in her official capacity, and CFG HEALTH SYSTEMS, LLC, in the *Monell* sense, as aforesaid, Plaintiff's foot infection progressed to a greater severity by the time of his transfer to state prison on 8/26/19 than would have been the case if his foot had been treated by Defs., CONSOLATA MULLI and CFG HEALTH SYSTEMS, LLC, in the Burlington Cty. Jail.

14

96. As a further direct and proximate result of the conduct of the Defendants, CONSOLATA MULLI, acting in her official capacity, and CFG HEALTH SYSTEMS, LLC, in the *Monell* sense, as aforesaid, Plaintiff's foot infection progressed to a greater severity by the time of the assumption of Plaintiff's healthcare by University Correctional Healthcare on 8/26/19 than would have been the case if his foot had been treated by Defendants, CONSOLATA MULLI and CFG HEALTH SYSTEMS, LLC, in the Burlington County Jail.

97. As a further direct and proximate result of the conduct of the Defendants, CONSOLATA MULLI, acting in her official capacity, and CFG HEALTH SYSTEMS, LLC, in the *Monell* sense, as aforesaid, Plaintiff's foot infection progressed to osteomyelitis during his time under the medical care of University Correctional Healthcare, which required and continues to require painful treatment in order to attempt to effectuate a cure, which would not have been the case if Plaintiff's foot had been treated by Defendants, CONSOLATA MULLI and CFG HEALTH SYSTEMS, LLC, in the Burlington County Jail.

98. As a further direct and proximate result of the conduct of the Defendants, CONSOLATA MULLI, acting in her official capacity, and CFG HEALTH SYSTEMS, LLC, in the *Monell* sense, as aforesaid, Plaintiff suffered trips to Trenton for treatment, more treatment, more physical pain, prospective amputation, more emotional distress and more mental anguish than would have been the case if Plaintiff's foot had been treated by Defs., CONSOLATA MULLI and CFG HEALTH SYSTEMS, LLC, in the Burlington Cty. Jail.

15

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants,

CONSOLATA MULLI and CFG HEALTH SYSTEMS, LLC for compensatory damages, punitive

damages, reasonable attorney's fees, interest and costs of suit.

### COUNT V

99. Plaintiff, BRANDON JONES, repeats the allegations of the First-Fourth Counts, and

incorporates the same by reference as if fully set forth at length herein.

100.    Defendants, JOHN/JANE DOES 1-20, are fictitious individuals, whose correct

identity is presently unknown, who either participated or were policymakers involved in

the healthcare of Plaintiff while he was at the Burlington County Jail in 2019 and

violated or interfered with a Plaintiff's right, causing Plaintiff harm.

101.    The conduct of Defendants, JOHN/JANE DOES 1-20 caused Plaintiff to be

deprived of a state constitutional right or interfered with such a right.

102.    As a direct and proximate result of the conduct of the Defendants, JOHN/JANE

DOES 1-20, Plaintiff suffered harm.

WHEREFORE, Plf. demands judgment against Defs. JOHN/JANE DOES 1-20, for compensatory

damages, punitive damages, reasonable attorney's fees, interest and costs of suit.

### COUNT VI

103.    Plaintiff, BRANDON JONES, repeats the allegations of the First-Fifth Counts, and

incorporates the same by reference as if fully set forth at length herein.

104.    On and prior to September 18, 2020, Plaintiff, BRANDON JONES, was a resident of

the ECU at South Woods State Prison.

105.     Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, is a corporate entity, which

operates the medical departments of the New Jersey state prisons, under contract with

NJDOC, with a principal office at Bates Building 2nd Floor, Whittlesey Road and

Stuyvesant Avenue, Trenton, County of Mercer, and State of New Jersey 08625.

106.     Defendant, DR. FNU UNIGBE, sued in his/her individual capacity, is a medical

provider employed inside SWSP by Defendant, UNIVERSITY CORRECTIONAL HEALTH

CARE, with a principal office at Bates Building 2nd Floor, Whittlesey Road and

Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

107.     Defendant, DR. FNU FAN, sued in his/her individual capacity, is a medical provider

employed inside South Woods State Prison by Defendant, UNIVERSITY CORRECTIONAL

HEALTH CARE, with a principal office at Bates Building 2nd Floor, Whittlesey Road and

Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

108.     Defendants, JOHN/JANE DOES 21-24, sued in their individual capacities, are

fictitious medical providers and/or supervisors, whose actual identity is unknown,

employed inside South Woods State Prison by Defendant, UNIVERSITY CORRECTIONAL

HEALTH CARE, with a principal office at Bates Building 2nd Floor, Whittlesey Road and

Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

109.     On September 18, 2020 and thereafter, Defendant, UNIVERSITY CORRECTIONAL

HEALTH CARE, was responsible for the health care of Plaintiff, BRANDON JONES.

110.     Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, operated under color of

state law.

17

111.    On September 18, 2020 and thereafter, Defendant, DR. FNU UNIGBE, participated in the health care of Plaintiff, BRANDON JONES.

112.    Defendant, DR. FNU UNIGBE, operated under color of state law.

113.    On December 2, 2020 and thereafter, Defendant, DR. FNU FAN, participated in the health care of Plaintiff, BRANDON JONES.

114.    Defendant, DR. FNU FAN, operated under color of state law.

115.    On and prior to September 18, 2020, Plaintiff, BRANDON JONES, was receiving extended care for osteomyelitis in his left foot.

116.    Plaintiff, BRANDON JONES, was receiving extended care for a PICC line infection.

117.    Plaintiff, BRANDON JONES, was under the care of Dr. Wisler, a podiatrist/wound care specialist in Hamilton, New Jersey, for his osteomyelitis.

118.    Plaintiff, BRANDON JONES, had two surgeries done to his left foot at Saint Francis Medical Center by Dr. Wisler between 6/19/20 and 7/27/20.

119.    Plaintiff, BRANDON JONES, was being or had been administered antibiotics for his osteomyelitis and/or PICC line infection while confined at South Woods State Prison.

120.    Dr. Wisler had ordered administration of medication post-surgery to Plaintiff while confined at South Woods State Prison.

121.    Dr. Wisler had ordered a new MRI of Plaintiff's left foot to be done following the conclusion of Plaintiff's six week course of antibiotics, which concluded on or about September 15, 2020.

122.    Plaintiff, BRANDON JONES, questioned Defendant, DR. FNU UNIGBE, about the effect the antibiotics he had been receiving would have on his kidneys.

18

123. Further, Plaintiff, BRANDON JONES, told Defendant, DR. FNU UNIGBE, or

Defendants, JOHN/JANE DOES 21-24, that Dr. Wisler had ordered that he receive a new

MRI to his left foot upon the completion of his most recent six week course of

antibiotics, which had ended on or about September 15, 2020.

124. Rather than tell Plaintiff the effect the antibiotics he had been receiving would

have on his kidneys, Defendant, DR. FNU UNIGBE, or Defendants, JOHN/JANE DOES 21-

24, ordered Plaintiff transferred out of ECU to general population.

125. Rather than arrange for Plaintiff to receive a new MRI to his left foot as ordered by

Dr. Wisler, Defendant, DR. FNU UNIGBE, or Defendants, JOHN/JANE DOES 21-24,

ordered Plaintiff transferred out of ECU to general population.

126. The transfer out of ECU on September 18, 2020 was to Plaintiff's detriment.

127. Plaintiff could not receive the same level of care in general population which he

received in ECU.

128. Moreover, Plaintiff was denied a new MRI of his left foot as ordered by Dr. Wisler

by Defendant, DR. FNU UNIGBE, or Defendants, JOHN/JANE DOES 21-24.

129. Moreover, Plaintiff was denied all post-surgery medication as ordered by Dr.

Wisler subsequent to his transfer to general population on September 18, 2020, by

Defendant, DR. FNU UNIGBE, or Defendants, JOHN/JANE DOES 21-24.

130. Moreover, Plaintiff was denied a post-surgical return visit to Dr. Wisler as ordered

by Dr. Wisler, by Defendant, DR. FNU UNIGBE, or Defendants, JOHN/JANE DOES 21-24.

131. Defendants, DR. FNU UNIGBE, DR. FNU FAN, or Defendants, JOHN/JANE DOES 21-

24, denied/delayed sending Plaintiff for a new MRI of his left foot as ordered by Dr.

Wisler through December 15, 2020, when Plaintiff was transferred out of SWSP.

19

132.    Defendants, DR. FNU UNIGBE, DR. FNU FAN, or Defendants, JOHN/JANE DOES 21-

24, denied/delayed administering post-surgery medication as ordered by Dr. Wisler to

Plaintiff through December 15, 2020, when Plaintiff was transferred out of SWSP.

133.    Defendants, DR. FNU UNIGBE, DR. FNU FAN, or Defendants, JOHN/JANE DOES 21-

24, denied/delayed sending Plaintiff for a post-surgical return visit to Dr. Wisler as

ordered by Dr. Wisler through 12/15/20, when Plaintiff was transferred out of SWSP.

134.    In between the dates 9/15/20-12/15/20, Plaintiff's medical needs were serious.

135.    Defendants, DR. FNU UNIGBE, DR. FNU FAN, or Defendants, JOHN/JANE DOES 21-

24, were deliberately indifferent to Plaintiff's serious medical needs.

136.    The law recognizes that deliberate indifference to a serious medical need of a

convicted prisoner by members of a prison medical staff will trigger a right under N.J.

Const. Art. I Par. 12 which shall not be violated or interfered with by state actors.

137.    The conduct of Defendants, DR. FNU UNIGBE, DR. FNU FAN, and/or JOHN/JANE

DOES 21-24, sued in their individual capacities, as aforesaid, violated or interfered with

Plaintiff's right under N.J. Const. Art. I Par. 12.

138.    As a direct and proximate result of the conduct of Defendants, DR. FNU UNIGBE,

DR. FNU FAN, and/or JOHN/JANE DOES 21-24, acting in their individual capacities, as

aforesaid, Plaintiff's underlying osteomyelitis progressed to a greater severity than

would have been the case if Plaintiff's osteomyelitis had been attended to by the

members of the prison medical staff in between 9/15/20 and 12/15/20.

139.    As a further direct and proximate result of the conduct of Defendants, DR. FNU

UNIGBE, DR. FNU FAN, and/or JOHN/JANE DOES 21-24, acting in their individual

20

capacities, Plaintiff suffered more physical pain, more emotional distress and more mental anguish than would have been the case if his osteomyelitis had been attended to by the members of the prison medical staff in between 9/15/20 and 12/15/20.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants, DR. FNU UNIGBE, DR. FNU FAN, and/or JOHN/JANE DOES 21-24, acting in their individual capacities, for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs of suit.

## COUNT VII

140.    Plaintiff, BRANDON JONES, repeats the allegations of the First-Sixth Counts, and incorporates the same by reference as if fully set forth at length herein.

141.    Defendant, JOHN/JANE DOE 25, sued in his/her official capacity, is a fictitious medical provider and/or supervisor, whose actual identity is unknown, employed by Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, with a principal office at Bates Building 2nd Floor, Whittlesey Road and Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

142.    Defendants, DR. FNU UNIGBE and/or JOHN/JANE DOE 25, sued in their official capacities, were persons with final policy-making authority on whether Plaintiff would or would not (1) remain in ECU; (2) receive a new MRI of his left foot as ordered by Dr. Wisler; (3) receive post-surgery medication as ordered by Dr. Wisler; and (4) receive a post-surgery return visit to Dr. Wisler as ordered by Dr. Wisler.

21

143.    The actions and/or inaction of Defendants, DR. FNU UNIGBE and/or JOHN/JANE

DOE 25, acting in their official capacities, as aforesaid, instead of taking action to see to

it that Plaintiff's serious medical needs were met, was such an inadequate practice so as

to be deliberate indifference to a serious medical need, and in violation of Plaintiff's

right under N.J. Const. Art. I Par. 12.

144.    Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, may be liable in accordance

with *Monell* under the Civil Rights Act for the establishment of a policy by Defendants,

DR. FNU UNIGBE, and/or JOHN/JANE DOE 25, of certain action and inaction, instead of

taking action to see to it that Plaintiff's serious medical needs were met, which, when

implemented by Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE's medical staff,

caused a deprivation of Plaintiff's right under N.J. Const. Art. I Par. 12.

145.    As a direct and proximate result of the conduct of Defendants, DR. FNU UNIGBE,

and/or JOHN/JANE DOE 25, acting in their official capacities, and/or UNIVERSITY

CORRECTIONAL HEALTH CARE, as aforesaid, Plaintiff's underlying osteomyelitis

progressed to a greater severity than would have been the case if Plaintiff's

osteomyelitis had not been the subject of a policy which was implemented by the prison

medical staff.

146.    As a further direct and proximate result of the conduct of Defendants, DR. FNU

UNIGBE, and/or JOHN/JANE DOE 25, acting in their official capacities, and/or

UNIVERSITY CORRECTIONAL HEALTH CARE, as aforesaid, Plaintiff suffered more physical

pain, more emotional distress and more mental anguish than would have been the case

if Plaintiff's osteomyelitis had not been the subject of a policy which was implemented

by the prison medical staff.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants, DR. FNU UNIGBE, and/or JOHN/JANE DOE 25, acting in their official capacities, and/or Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs of suit.

## COUNT VIII

147.  Plaintiff, BRANDON JONES, repeats the allegations of the First-Seventh Counts, and incorporates the same by reference as if fully set forth at length herein.

148.  Defendant, DR. FNU KELITTA, sued in his/her individual capacity, is a medical provider employed inside NJSP by Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, with a principal office at Bates Building 2nd Floor, Whittlesey Road and Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

149.  Defendant, DR. FNU HAGGAG, sued in his/her individual capacity, is a medical provider employed inside NJSP by Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, with a principal office at Bates Building 2nd Floor, Whittlesey Road and Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

150.  Defendants, JOHN/JANE DOES 26-30, sued in their individual capacities, are fictitious medical providers and/or supervisors, whose actual identity is unknown, employed inside the infirmary of NJSP by Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, with a principal office at Bates Building 2nd Floor, Whittlesey Road and Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

151.  Defendants, JOHN/JANE DOES 31-34, sued in their individual capacities, are fictitious medical providers and/or supervisors, whose actual identity is unknown,

23

employed inside NJSP by Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, with a

principal office at Bates Building 2nd Floor, Whittlesey Road and Stuyvesant Avenue,

Trenton, County of Mercer and State of New Jersey 08625.

152.    On 12/15/20 and thereafter, Defendant, DR. FNU KELITTA, participated in the

health care of Plaintiff, BRANDON JONES.

153.    Defendant, DR. FNU KELITTA, operated under color of state law.

154.    On 12/21/20 and thereafter, Defendant, DR. FNU HAGGAG, participated in the

health care of Plaintiff, BRANDON JONES.

155.    Defendant, DR. FNU HAGGAG, operated under color of state law.

156.    On and prior to December 1, 2020, Plaintiff, BRANDON JONES, developed a

urological condition.

157.    On December 1, 2020, Plaintiff, BRANDON JONES, was transported to Saint Francis

Medical Center to be seen by a urologist.

158.    On December 2, 2020, at Saint Francis Medical Center, Plaintiff, BRANDON JONES,

had a catheter inserted in his abdomen for his urine to flow through and into an

attached bag, by said urologist.

159.    The urologist's directive was that the catheter was to remain in place for 30 days.

160.    The insertion of the catheter left a wound in Plaintiff's abdomen post-surgery.

161.    The urologist supplied a dressing to cover the wound.

162.    The urologist's directive was that the dressing was to be changed every day.

163.    Prior to December 15, 2020, it became apparent to Plaintiff that the insertion of

the catheter on December 2, 2020 had been unsuccessful because the catheter was

leaking urine on him.

164.     Plaintiff, BRANDON JONES, made Defendants, DR. FNU FAN and/or Defendants,

         JOHN/JANE DOES 21-24, aware that the insertion of the catheter on December 2, 2020

         had been unsuccessful.

165.     Defendants, DR. FNU FAN, and/or Defendants, JOHN/JANE DOES 21-24, became

         aware that the insertion of the catheter on December 2, 2020 had been unsuccessful.

166.     On or about December 11, 2020, Defendants, DR. FNU FAN and/or Defendants,

         JOHN/JANE DOES 21-24, responded by informing Plaintiff that he would be scheduled

         for a return visit to the urologist at Saint Francis Hospital for the purpose of

         removing/changing the catheter and that this visit was expected to occur on or about

         December 26, 2020.

167.     In between December 11, 2020 and December 15, 2020, Plaintiff developed a

         condition where he would be weak and dizzy, his legs would give out, his head would

         shake and his vision would be blurry.

168.     Further, in between December 11, 2020 and December 15, 2020, Plaintiff fell

         three times and hit his head.

169.     Plaintiff made Defendants, DR. FNU FAN and/or Defendants, JOHN/JANE DOES 21-

         24, aware of the development of the new condition of weakness, dizziness, legs giving

         out, head shaking and blurry vision, and that he had fallen three times and hit his head.

170.     Defendants, DR. FNU FAN, and/or Defendants, JOHN/JANE DOES 21-24, became

         aware of the development of the new condition of weakness, dizziness, legs giving out,

         head shaking and blurry vision, and that Plaintiff had fallen three times and hit his head.

171.     On December 15, 2020, Plaintiff was transferred from SWSP to NJSP.

25

172.    Once at NJSP, Plaintiff was assigned to administrative segregation (ADSEG).

173.    Once at NJSP, Plaintiff was seen by an intake nurse.

174.    Plaintiff informed the intake nurse his legs would give out on him, he was weak, he was dizzy, his head would shake and his vision would be blurry, and that he was subject to falls.

175.    Plaintiff was transferred to the infirmary at NJSP.

176.    Notwithstanding Plaintiff was now housed in the infirmary at NJSP, Defendants, DR. FNU KELITTA, and/or Defs., JOHN/JANE DOES 26-30, did not act to examine Plaintiff and attempt to diagnose what was wrong with him in between 12/15/20 and 12/21/20.

177.    On December 20, 2020, Plaintiff was given a wheelchair in a cell in the infirmary.

178.    On December 21, 2020, Defendant, DR. FNU KELITTA, spoke to Plaintiff in person in the infirmary.

179.    Defendant, DR. FNU KELITTA, took Plaintiff's wheelchair away.

180.    Further, Defendant, DR. FNU KELITTA, told Plaintiff he was OK and could walk.

181.    Further, Defendant, DR. FNU KELITTA, discharged Plaintiff from the infirmary.

182.    Upon discharge from the infirmary at NJSP on 12/21/20, Plaintiff was transferred back to ADSEG at NJSP.

183.    Subsequent to his discharge back to ADSEG at NJSP on 12/21/20, Plaintiff was subject to denial/delay of:

> • Any post-surgery follow-up care for the wound on his abdomen by Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, from 12/21/20 to 12/29/20, 1/6/21 to 2/24/21

26

- Getting the dressing changed on the wound on his abdomen by Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, from 12/21/20 to 2/24/21

- Getting an examination and an attempt at a diagnosis to find out what was wrong with him with reference to his complaints of legs giving out, weakness, dizziness, shaking of the head, blurry vision and being subject to falls by Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, from 12/21/20 to 12/29/20

- An order for a post-surgery referral to the urologist at Saint Francis Medical Center for the purpose of removal/change of the catheter attached to his abdomen after 30 days from its insertion (as per the urologist), and/or stitches, by Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, from 1/2/21 to 1/27/21, 2/17/21 to 2/24/21

- An order for a post-surgery referral to Dr. Wisler at Saint Francis Medical Center for the purpose of assessment post two surgeries done between 6/19/20 and 7/27/20, by Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, from 1/11/21 to present

- Any post-surgery follow-up care for the osteomyelitis on his left foot by Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, from 1/11/21 to present (the present for purposes of this suit is 3/3/21)

184. Subsequent to his discharge back to ADSEG at NJSP on 12/21/20, Plaintiff became aware of a bad odor and pus coming from his surgical wound on his abdomen.

27

185.    On December 28, 2020, Plaintiff told a nurse that his wound which allowed the

catheter to enter his body was infected and had a bad odor and pus.

186.    On December 29, 2020, Plaintiff was seen by Defendant, DR. FNU HAGGAG.

187.    Plaintiff informed Defendant, DR. FNU HAGGAG, that his wound on his abdomen

had been leaking urine, that the wound was infected, and that the dressing on the

wound had not been changed since his arrival at NJSP on December 15, 2020.

188.    In response to Plaintiff's complaint that the wound on his abdomen was leaking

urine as a mal result of the surgical insertion of a catheter, Defendant, DR. FNU

HAGGAG, denied/delayed Plaintiff a return visit to his urologist at Saint Francis Hospital.

189.    In response to Plaintiff's complaint that the dressing on the wound on his

abdomen had not been changed since his arrival at NJSP on December 15, 2020,

Defendant, DR. FNU HAGGAG, denied/delayed Plaintiff the issuance of a doctor's order

providing that Plaintiff's dressing was to be changed at regular intervals.

190.    In response to Plaintiff's complaint that the wound on his abdomen was infected,

Defendant, DR. FNU HAGGAG, ordered that Plaintiff be put on a course of antibiotics.

191.    The course of antibiotics which Defendant, DR. FNU HAGGAG, had ordered came

to a conclusion on January 5, 2021.

192.    On January 5, 2021, Plaintiff noticed that his left foot was infected again.

193.    On January 11, 2021, Plaintiff dropped a medical slip to the medical department.

194.    The medical slip of 1/11/21 referenced that: Plaintiff's left foot looked infected.

195.    Further, the medical slip of 1/11/21 referenced that: Plaintiff had not gone to the

bathroom in four days.

28

196.    On and subsequent to 1/11/21, Defendants, DR. FNU HAGGAG and/or JOHN/JANE

DOES 31-34, were aware that Plaintiff's left foot looked infected.

197.    Further, on and subsequent to 1/11/21, Defendants, DR. FNU HAGGAG and/or

JOHN/JANE DOES 31-34, were aware that Plaintiff had not gone to the bathroom in four

days.

198.    Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, were not

responsive to Plaintiff's 1/11/21 medical slip from 1/11/21 to present (the present for

purposes of this suit is 3/3/21).

199.    On January 13, 2021, Plf. again dropped a medical slip to the medical department.

200.    The medical slip of 1/13/21 referenced that: Plaintiff had constipation for a week.

201.    On and subsequent to 1/13/21, Defendants, DR. FNU HAGGAG and/or JOHN/JANE

DOES 31-34, were aware that Plaintiff had constipation for a week.

202.    Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, were not

responsive to Plaintiff's 1/13/21 medical slip.

203.    On January 19, 2021, Plf. again dropped a medical slip to the medical department.

204.    The medical slip of 1/19/21 referenced that: Plaintiff's left foot looked infected.

205.    Further, the medical slip of 1/19/21 referenced that: Plaintiff's wound in his

abdomen looked infected.

206.    Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, were not

responsive to Plaintiff's 1/19/21 medical slip from 1/19/21 to 1/27/21 (the abdomen)

and to present (the left foot) (the present for purposes of this suit is 3/3/21).

207.    On January 20, 2021, Plf. dropped a medical slip to the medical department.

208.    The medical slip of 1/20/21 referenced that: Plaintiff had constipation.

29

209.    Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34, were not

responsive to Plaintiff's 1/20/21 medical slip.

210.    On January 27, 2021, Plaintiff was transported to Saint Francis Medical Center and

seen by the urologist.

211.    Plaintiff was put on another course of antibiotics by the urologist.

212.    Plaintiff was transported from Saint Francis Medical Center back to NJSP.

213.    Upon arrival at NJSP, Plaintiff still had a catheter which had been inserted in his

abdomen by the urologist.

214.    On 1/28/21, Plaintiff was examined by a nurse in the medical department of NJSP.

215.    Plaintiff was informed by the nurse who examined him on 1/28/21 that she was

aware his toe was infected and he might have a recurrence of osteomyelitis.

216.    On February 4, 2021, Plaintiff put in a grievance about the denial/delay of

treatment for his left foot.

217.    Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOES 31-34 were not

responsive to Plaintiff's 2/4/21 grievance from 2/4/21 to present (the present for

purposes of this suit is 3/3/21).

218.    On February 5, 2021, Plaintiff noticed a hole in a toe of his left foot.

219.    Also on February 5, 2021, Plaintiff noticed the hole in a toe of his left foot was

bleeding and pussing.

220.    On February 16, 2021, Plaintiff went to the medical station in NJSP.

221.    Plf. was examined by one of Defendants JOHN/JANE DOES 31-34.

222.    Plf. showed the individual who examined him his foot, told her it looked infected.

30

223.   The individual who examined Plaintiff's foot, one of Defendants JOHN/JANE DOES

31-34, told Plaintiff to put his shoe back on and denied him any treatment.

224.   On February 17, 2021, Plaintiff dropped a medical slip to the medical department.

225.   The medical slip of 2/17/21 referenced that: his left foot looked infected.

226.   Further, the medical slip of 2/17/21 referenced that: the wound in his abdomen

looked infected.

227.   On February 19, 2021, Plaintiff went to the medical station in NJSP.

228.   Plf. was examined by one of Defendants JOHN/JANE DOES 31-34.

229.   Plaintiff showed the individual who examined him his abdomen, told her it looked

infected.

230.   The individual who examined Plaintiff's abdomen, one of Defendants JOHN/JANE

DOES 31-34, told Plaintiff the catheter site was not infected and it was OK, denying Plf.

treatment but providing him with bandages to do his own dressing change.

231.   Plf. told the individual who examined him about his left foot, told her it looked

infected.

232.   The individual who examined Plf., one of Defendants JOHN/JANE DOES 31-34, told

Plf. he would be going back to Dr. Wisler, denying Plf. treatment in the interim.

233.   On February 23, 2021, Plaintiff went to the medical station in NJSP.

234.   Plf. was examined by a nurse.

235.   Plaintiff showed the individual who examined him his abdomen, told her it looked

infected.

236.   The individual who examined Plaintiff's abdomen acknowledged the catheter site

was infected.

31

237.     On February 24, 2021, Plaintiff was transported to Saint Francis Medical Center and was seen by the urologist.

238.     The urologist confirmed to Plaintiff that there was a catheter insert site infection.

239.     The urologist told Plaintiff there should have been a dressing applied to the catheter insertion site and the area should have been cleaned every day.

240.     Plaintiff was transported back from Saint Francis Medical Center to NJSP.

241.     At present (the present for purposes of this suit is 3/3/21) Plaintiff has not been transported from NJSP to St. Francis Med. Ctr. for the purpose of a visit with Dr. Wisler.

242.     In between the dates 12/15/20 and the present (the present for purposes of this suit is 3/3/21) Plaintiff's medical needs were and are serious.

243.     Defendants, DR. FNU KELITTA, DR. FNU HAGGAG and/or JOHN/JANE DOES 26-34, were and are deliberately indifferent to Plaintiff's serious medical needs.

244.     The conduct of Defendants, DR. FNU KELITTA, DR. FNU HAGGAG and/or JOHN/JANE DOES 26-34, sued in their individual capacities, as aforesaid, violated or interfered with Plaintiff's right under N.J. Const. Art. Par. 12.

245.     As a direct and proximate result of the conduct of Defendants, DR. FNU KELITTA, DR. FNU HAGGAG, and/or JOHN/JANE DOES 26-34, acting in their individual capacities, as aforesaid, Plaintiff's weakness, dizziness, blurred vision, susceptibility to falls, underlying osteomyelitis and catheter insert wound infection progressed to a greater severity than would have been the case if Plaintiff's weakness, dizziness, blurred vision, susceptibility to falls, underlying osteomyelitis and catheter insert wound infection had been attended to by the members of the prison medical staff in between 12/15/20 and the present (the present for purposes of this suit is 3/3/21).

246.    As a further direct and proximate result of the conduct of Defendants, DR. FNU

KELITTA, DR. FNU HAGGAG, and/or JOHN/JANE DOES 26-34, acting in their individual

capacities, as aforesaid, Plaintiff suffered more physical pain, more emotional distress

and more mental anguish than would have been the case if his weakness, dizziness,

blurred vision, susceptibility to falls, underlying osteomyelitis and catheter insert wound

infection had been attended to by the members of the prison medical staff in between

12/15/20 and the present (the present for purposes of this suit is 3/3/21).

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants, DR.

FNU KELITTA, DR. FNU HAGGAG, and/or JOHN/JANE DOES 26-34, acting in their

individual capacities, for compensatory damages, punitive damages, reasonable

attorney's fees, interest and costs of suit.

## COUNT IX

247.    Plaintiff, BRANDON JONES, repeats the allegations of the First-Eighth Counts, and

incorporates the same by reference as if fully set forth at length herein.

248.    Defendant, JOHN/JANE DOE 35, sued in his/her official capacity, is a fictitious

medical provider and/or supervisor, whose actual identity is unknown, employed by

Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, with a principal office at Bates

Building 2nd Floor, Whittlesey Road and Stuyvesant Avenue, Trenton, County of Mercer

and State of New Jersey 08625.

249.    Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOE 35, sued in their official

capacities, were persons with final policy-making authority on whether Plaintiff would or

would not (1) receive post-surgery follow-up care for the wound on his abdomen;

33

(2) get the dressing changed on the wound on his abdomen; (3) get an order for a post-surgery referral to the urologist at Saint Francis Medical Center for the purpose of removal/change of the catheter attached to his abdomen after 30 days from its insertion (as per the urologist) and/or stitches; (4) get an order for a post-surgery referral to Dr. Wisler at Saint Francis Medical Center for the purpose of assessment post two surgeries done between 6/19/20 and 7/27/20; and (5) receive any post-surgery follow-up care for the osteomyelitis on his left foot.

250.    The actions and/or inaction of Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOE 35, acting in their official capacities, as aforesaid, instead of taking action to see to it that Plaintiff's serious medical needs were met, was such an inadequate practice so as to be deliberate indifference to a serious medical need, and in violation of Plaintiff's right under N.J. Const. Art. I Par. 12.

251.    Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, may be liable in accordance with *Monell* under the Civil Rights Act for the establishment of a policy by Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOE 35, of certain action and inaction, instead of taking action to see to it that Plaintiff's serious medical needs were met, which, when implemented by Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE's medical staff, caused a deprivation of Plaintiff's right under N.J. Const. Art. I Par. 12.

252.    As a direct and proximate result of the conduct of Defendants, DR. FNU HAGGAG and/or JOHN/JANE DOE 35, acting in their official capacities, and/or UNIVERSITY CORRECTIONAL HEALTH CARE, as aforesaid, Plaintiff's underlying osteomyelitis and catheter insert wound infection progressed to a greater severity than would have been

34

the case if Plaintiff's osteomyelitis and catheter insert wound infection had not been the

subject of a policy which was implemented by the prison medical staff.

253.     As a further direct and proximate result of the conduct of Defendants, DR. FNU

HAGGAG and/or JOHN/JANE DOE 35, acting in their official capacities, and/or

UNIVERSITY CORRECTIONAL HEALTH CARE, as aforesaid, Plaintiff suffered more physical

pain, more emotional distress and more mental anguish than would have been the case

if Plaintiff's osteomyelitis and catheter insert wound infection had not been the subject

of a policy which was implemented by the prison medical staff.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants, DR.

FNU HAGGAG and/or JOHN/JANE DOE 35, acting in their official capacities, and/or

Defendant, UNIVERSITY CORRECTIONAL HEALTH CARE, for compensatory damages,

punitive damages, reasonable attorney's fees, interest and costs of suit.

## COUNT X

254.     Plaintiff, BRANDON JONES, repeats the allegations of the First-Ninth Counts, and

incorporates the same by reference as if fully set forth at length herein.

255.     Defendant, BRUCE DAVIS, sued in his individual capacity, is the Warden at NJSP,

with a principal address of 600 Cass Street, in the City of Trenton, County of Mercer and

State of New Jersey.

256.     Defendants, JOHN/JANE DOES 36-40, sued in their individual capacities, are

fictitious supervisors who are responsible for conditions of confinement, whose actual

identity is unknown, who are employed inside NJSP, with a principal address of 600 Cass

Street, in the City of Trenton, County of Mercer and State of New Jersey.

35

257.     Defendants, JOHN/JANE DOES 41-45, sued in their individual capacities, are

fictitious individuals who are not supervisors, whose actual identity is unknown, who are

employed inside NJSP, with a principal address of 600 Cass Street, in the City of Trenton,

County of Mercer and State of New Jersey.

- On 12/15/20 and thereafter, Defendant, BRUCE DAVIS, had personal involvement with

  regard to the wrongful conditions of confinement suffered by Plaintiff by either:

  - Establishing and maintaining a policy, practice or custom which directly caused

    Plaintiff's harm; or

  - Participating in violating Plaintiff's rights; or

  - Directing others to violate Plaintiff's rights; or

  - As the person in charge, having knowledge of and acquiescing in his

    subordinates' violations of Plaintiff's rights

258.     Defendant, BRUCE DAVIS, acted under color of state law.

259.     On 12/15/20 and thereafter, Defendants, JOHN/JANE DOES 36-40, had personal

involvement with regard to the wrongful conditions of confinement suffered by Plaintiff

by either:

  - Establishing and maintaining a policy, practice or custom which directly caused

    Plaintiff's harm; or

  - Participating in violating Plaintiff's rights; or

  - Directing others to violate Plaintiff's rights; or

  - As the person in charge, having knowledge of and acquiescing in his/her

    subordinates' violations of Plaintiff's rights.

260. Defendants, JOHN/JANE DOES 36-40, acted under color of state law.

261. On 12/15/20 and thereafter, Defendants, JOHN/JANE DOES 41-45, participated in the conditions of the confinement of Plaintiff, BRANDON JONES.

262. Defendants, JOHN/JANE DOES 41-45, operated under color of state law.

263. Subsequent to his transfer to ADSEG at NJSP on 12/15/20, the deprivations Plaintiff suffered included but were not limited to:

- Freshly laundered clothes. Plaintiff was required to remain in the same clothes without being allowed access to the laundry from 12/15/20 for a certain duration of time

- The transfer of his property from SWSP to NJSP from 12/15/20 to 2/17/21

- Being able to correspond by letter with his attorney, since his paper, envelopes, stamps and attorney's address were in his property which was not transferred from SWSP to NJSP from 12/15/20 to 2/17/21

- His orthopedic shoes which had been specially prescribed by Dr. Wisler, and to his knowledge were last seen as part of the contents of his property which was not transferred from SWSP to NJSP from 12/15/20 to present.

264. On 1/27/21, Plaintiff noticed that his toes were curled up as well as infected again which to his understanding his orthopedic shoes were designed to prevent.

265. On 2/17/21 when Plaintiff's property was provided to Plaintiff, Plaintiff's special orthopedic shoes were missing from Plaintiff's property.

266. On 2/24/21, Plaintiff was informed by Defendants, JOHN/JANE DOES 36-45, that he would not be allowed his orthopedic shoes which had been specially prescribed by Dr. Wisler for the duration of his time in ADSEG at NJSP.

267.    The law recognizes that conditions of confinement will be cruel and unusual

punishment when the deprivation was objectively sufficiently serious such that the

prison officials' acts or omissions resulted in the denial of the minimal civilized measure

of life's necessities.

268.    The acts and omissions by Defendants, BRUCE DAVIS and JOHN/JANE DOES 36-45,

from 12/15/20 to the present, were and are objectively sufficiently serious so as to deny

Plaintiff the minimal civilized measure of life's necessities.

269.    Defendants, BRUCE DAVIS and/or JOHN/JANE DOES  36-40 were and are

deliberately indifferent to the deprivations in Plaintiff's conditions of confinement.

270.    Defendants, JOHN/JANE DOES 41-45, were and are deliberately indifferent to the

deprivations in Plaintiff's conditions of confinement.

271.    The conduct of Defendants, BRUCE DAVIS and/or JOHN/JANE DOES 36-45, acting

in their individual capacities, as aforesaid, was cruel and unusual punishment and

violated or interfered with Plaintiff's rights under N.J. Const. Art. I Par. 12.

272.    As a direct and proximate result of the conduct of Defendants, BRUCE DAVIS

and/or JOHN/JANE DOES 36-45, acting in their individual capacities, as aforesaid,

Plaintiff's underlying osteomyelitis progressed to a greater severity than would have

been the case if Plaintiff's underlying osteomyelitis had not been interfered with by the

members of the prison staff by denying Plaintiff his special orthopedic shoes in between

12/15/20 and the present.

273.    As a further direct and proximate result of the conduct of Defendants, BRUCE

DAVIS and/or JOHN/JANE DOES 36-45, acting in their individual capacities, as aforesaid,

Plaintiff suffered more physical pain, more discomfort, more emotional distress and more mental anguish than would have been the case if the prison staff had not deprived and/or interfered with Plaintiff's minimal civilized measure of life's necessities in between 12/15/20 and the present.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants, BRUCE DAVIS and/or JOHN/JANE DOES 36-45, acting in their individual capacities, for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs of suit.

## COUNT XI

274. Plaintiff, BRANDON JONES, repeats the allegations of the First-Tenth Counts, and incorporates the same by reference as if fully set forth at length herein.

275. The law recognizes that interference by prison administrators and/or officers, acting in their individual capacities, with the ability of the prison medical department staff to provide medical care for prisoners' serious medical needs will trigger a right under N.J. Const. Art. I Par. 12.

276. The conduct of Defendants, BRUCE DAVIS and/or JOHN/JANE DOES 36-45, acting in their individual capacities, was and is interference by prison administrators and/or officers with the ability of the prison medical department staff to provide medical care for Plaintiff's serious medical needs.

277. The conduct of Defendants, BRUCE DAVIS and/or JOHN/JANE DOES 36-45, acting in their individual capacities, violated or interfered with Plaintiff's right under N.J. Const. Art. I Par. 12.

278.    As a direct and proximate result of the conduct of Defendants, BRUCE DAVIS
and/or JOHN/JANE DOES 36-45, acting in their individual capacities, Plaintiff's weakness,
blurred vision, susceptibility to falls, underlying osteomyelitis and catheter insert wound
infection progressed to a greater severity than would have been the case if the medical
care for Plaintiff's weakness, blurred vision, susceptibility to falls, underlying
osteomyelitis and catheter insert wound infection had not been interfered with by
members of the prison administration and/or officers in between 12/15/20 and the
present (the present for purposes of this suit is 3/3/21).

279.    As a further direct and proximate result of the conduct of Defendants, BRUCE
DAVIS and/or JOHN/JANE DOES 36-45, acting in their individual capacities, Plaintiff
suffered more physical pain, more emotional distress and more mental anguish than
would have been the case if the medical care for Plaintiff's weakness, blurred vision,
susceptibility to falls, underlying osteomyelitis and catheter insert wound infection had
not been interfered with by members of the prison administration and/or officers in
between 12/15/20 and the present (the present for purposes of this suit is 3/3/21).

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants,
BRUCE DAVIS and/or JOHN/JANE DOES 36-45, acting in their individual capacities, for
compensatory damages, punitive damages, reasonable attorney's fees, interest and
costs of suit.

## COUNT XII

280.    Plaintiff, BRANDON JONES, repeats the allegations of the First-Eleventh Counts,
and incorporates the same by reference as if fully set forth at length herein.

40

281.    Defendant, STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, is a

department of the State of New Jersey, with a principal office at Bates Building 2nd

Floor, Whittlesey Road and Stuyvesant Avenue, Trenton, County of Mercer and State of

New Jersey 08625.

282.    Defendant, STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, is not sued

under the Civil Rights Act, to which it is immune.

283.    Defendant, STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, has

promulgated certain regulations which appear in the N.J. Administrative Code.

284.    N.J.A.C. 10A:4-3.1(a) notifies inmates of their rights.

285.    This section (N.J.A.C. 10A:4-3.1(a)) creates rights for all inmates which have the

force of law.

286.    By violating or interfering with this section (N.J.A.C. 10A:4-3.1(a)) Defendant,

STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, acted in contravention of the

regulations it had promulgated - N.J.A.C. 10A:4-3.1(a).

287.    The case law of this State recognizes that it is unlawful for a department or

administrative agency to disregard the regulations it has promulgated.

288.    By disregarding, through its acts and/or omissions, the regulations it had

promulgated - N.J.A.C. 10A:4-3.1(a) - Defendant, STATE OF NEW JERSEY DEPARTMENT

OF CORRECTIONS, acted unlawfully towards Plaintiff.

289.    As a direct and proximate result of the conduct of Defendant, STATE OF NEW

JERSEY DEPARTMENT OF CORRECTIONS, Plaintiff's weakness, blurred vision,

susceptibility to falls, underlying osteomyelitis and catheter insert wound infection

41

progressed to a greater severity than would have been the case if the medical care for

Plaintiff's weakness, blurred vision, susceptibility to falls, underlying osteomyelitis and

catheter insert wound infection had not been interfered with by Defendant, STATE OF

NEW JERSEY DEPARTMENT OF CORRECTIONS, in between 12/15/20 and the present (the

present for purposes of this suit is 3/3/21).

290.    As a further direct and proximate result of the conduct of Defendant, STATE OF

NEW JERSEY DEPARTMENT OF CORRECTIONS, Plaintiff's underlying osteomyelitis

progressed to a greater severity than would have been the case if Plaintiff's underlying

osteomyelitis had not been interfered with by Defendant, STATE OF NEW JERSEY

DEPARTMENT OF CORRECTIONS, by denying Plaintiff his special orthopedic shoes in

between 12/15/20 and the present.

291.    As a further direct and proximate result of the conduct of Defendant, STATE OF

NEW JERSEY DEPARTMENT OF CORRCTIONS, Plaintiff suffered more physical pain, more

discomfort, more emotional distress and more mental anguish than would have been

the case if Defendant, STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, had not

deprived and/or interfered with Plaintiff's rights in between 12/15/20 and the present.

292.    As a further direct and proximate result of the conduct of Defendant, STATE OF

NEW JERSEY DEPARTMENT OF CORRECTIONS, Plaintiff suffered more physical pain,

more emotional distress and more mental anguish than would have been the case if the

medical care for Plaintiff's weakness, blurred vision, susceptibility to falls, underlying

osteomyelitis, and catheter insert wound infection had not been interfered with by

Defendant, STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, in between

12/15/20 and the present (the present for purposes of this suit is 3/3/21).

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendant,

STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, for compensatory damages,

punitive damages, reasonable attorney's fees, interest and costs of suit.

### COUNT XIII

293. Plaintiff, BRANDON JONES, repeats the allegations of the First-Twelfth Counts, and incorporates the same by reference as if fully set forth at length herein.

294. Defendants, JOHN/JANE DOES 46-50, sued in their individual capacities, are fictitious supervisors, responsible for conditions of confinement at NJSP, or who interfered with the ability of the NJSP medical department staff to provide medical care for Plaintiff's serious medical needs, whose actual identity is unknown, employed outside NJSP by, or with a contractor of, Defendant, STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, with a principal address of Bates Building 2nd Floor, Whittlesey Road and Stuyvesant Avenue, Trenton, County of Mercer and State of New Jersey 08625.

295. Defendants, JOHN/JANE DOES 46-50, acted under color of state law.

296. Plaintiff sues under the Civil Rights Act.

297. On 12/15/20 and thereafter, Defendants, JOHN/JANE DOES 46-50 had personal involvement with regard to the wrongful conditions of confinement suffered by Plaintiff by either:

- Establishing and maintaining a policy, practice or custom which directly caused Plaintiff's harm;

43

- Participating in violating Plaintiff's rights; or

- Directing others to violate Plaintiff's rights; or

- As the person in charge, having knowledge of and acquiescing in his subordinates' violations of Plaintiff's rights; or

- Interfering with the ability of the NJSP medical department staff to provide medical care for Plaintiff's serious medical needs

298.    The acts and omissions by Defendants, JOHN/JANE DOES 46-50, from 12/15/20 to the present, were and are objectively sufficiently serious so as to deny Plaintiff the minimal civilized measure of life's necessities.

299.    Defendants, JOHN/JANE DOES 46-50, were and are deliberately indifferent to the deprivations in Plaintiff's conditions of confinement and to the deprivations in the conditions of confinement of like prisoners.

300.    Alternatively, the conduct of Defendants, JOHN/JANE DOES 46-50, acting in their individual capacities, was and is interference by them with the ability of the prison medical department staff to provide medical care for Plaintiff's serious medical needs.

301.    The conduct of Defendants, JOHN/JANE DOES 46-50, acting in their individual capacities, was and is cruel and unusual punishment and violated or interfered with Plaintiff's rights under N.J. Const. Art. I Par. 12.

302.    As a direct and proximate result of the conduct of Defendants, JOHN/JANE DOES 46-50, acting in their individual capacities, Plaintiff's weakness, blurred vision, susceptibility to falls, underlying osteomyelitis and catheter insert wound infection progressed to a greater severity than would have been the case if the medical care for

44

Plaintiff's weakness, blurred vision, susceptibility to falls, underlying osteomyelitis and catheter insert wound infection had not been interfered with by Defendants, JOHN/JANE DOES 46-50, in between 12/15/20 and the present (the present for purposes of this suit is 3/3/21).

303.    As a further direct and proximate result of the conduct of Defendants, JOHN/JANE DOES 46-50, acting in their individual capacities, Plaintiff's underlying osteomyelitis progressed to a greater severity than would have been the case if Plaintiff's underlying osteomyelitis had not been interfered with by Defendants, JOHN/JANE DOES 46-50, by denying Plaintiff his special orthopedic shoes in between 12/15/20 and the present.

304.    As a further direct and proximate result of the conduct of Defendants, JOHN/JANE DOES 46-50, acting in their individual capacities, Plaintiff suffered more physical pain, more discomfort, more emotional distress and more mental anguish than would have been the case if Defendants, JOHN/JANE DOES 46-50 had not deprived and/or interfered with Plaintiff's rights in between 12/15/20 and the present.

305.    As a further direct and proximate result of the conduct of Defendants, JOHN/JANE DOES 46-50, acting in their individual capacities, Plaintiff suffered more physical pain, more emotional distress and more mental anguish than would have been the case if the medical care for Plaintiff's weakness, blurred vision, susceptibility to falls, underlying osteomyelitis, and catheter insert wound infection had not been interfered with by Defendants, JOHN/JANE DOES 46-50, in between 12/15/20 and the present.

WHEREFORE, Plaintiff, BRANDON JONES, demands judgment against Defendants, JOHN/JANE DOES 46-50, for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs of suit.

45

## JURY DEMAND

Plaintiff demands a trial by jury of all issues which are triable by a jury in this action.

## DESIGNATION OF TRIAL COUNSEL

Peter Kober, Esq. is designated as trial counsel for Plaintiff, BRANDON JONES, in this action.


KOBER LAW FIRM, LLC


BY: _s/ Peter Kober_

Peter Kober, Esq.


DATED: March 16, 2021

## CERTIFICATION OF NO OTHER ACTIONS

The matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, I know of no other parties that should be joined in this action. I recognize the continuing obligation of each party to file and serve on all other parties and the court an amended certification if there is a change in the facts of this certification.

KOBER LAW FIRM, LLC

DATED: March 16, 2021

BY: s/ Peter Kober
Peter Kober, Esq.

47

# Civil Case Information Statement

**Case Details: BURLINGTON | Civil Part Docket# L-001714-20**

**Case Caption:** JONES BRANDON  VS BOWMAN NAKIA

**Case Initiation Date:** 09/08/2020

**Attorney Name:** PETER M KOBER

**Firm Name:** KOBER LAW FIRM LLC

**Address:** 1864 RTE 70 EAST

CHERRY HILL NJ 08003

**Phone:** 8567615090

**Name of Party:** PLAINTIFF : Jones, Brandon

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** CIVIL RIGHTS

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Brandon Jones? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain)   Patient/Medical Provider

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/08/2020
Dated

/s/ PETER M KOBER
Signed

```
BURLINGTON COUNTY
SUPERIOR COURT
49 RANCOCAS ROAD
MT HOLLY        NJ 08060
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (609) 288-9500
COURT HOURS  8:30 AM - 4:30 PM


                        DATE:    SEPTEMBER 08, 2020
                        RE:      JONES BRANDON  VS BOWMAN NAKIA
                        DOCKET:  BUR L -001714 20

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

    DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON JOHN E. HARRINGTON

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (609) 288-9500.


    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                            ATT: PETER M. KOBER
                            KOBER LAW FIRM LLC
                            1864 RTE 70 EAST
                            CHERRY HILL       NJ 08003

ECOURTS
```